UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| JOSE ORLANDO GARCIA-DURAN, )<br>)<br>Movant, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No.  CV412-221<br>CR410-100 |

## REPORT AND RECOMMENDATION

Following his conviction by a jury on drug importation and related charges, this Court sentenced Jose Garcia-Duran to serve 262 months in prison, a sentence at the high end of his guidelines range. Doc. 175 at 3.[1] He unsuccessfully appealed his conviction. *United States v. Garcia-Duran*, 453 F. App'x 950 (11th Cir. 2012). Now he seeks relief under 28 U.S.C. § 2255, asserting three grounds: (1) that his trial counsel was constitutionally ineffective in failing to provide an adequate explanation of the government's plea offer and his sentencing exposure;

---

[1] All record citations are to the criminal docket, CR410-100, unless otherwise noted. All pinpoint citations are to the page number imprinted by the Court's electronic case filing system.

(2) that trial counsel was ineffective in failing to raise a *Brady* violation on direct appeal; and (3) that the government knowingly presented false testimony at trial.

The government conceded, and the Court agreed, that an evidentiary hearing was needed to resolve a factual dispute regarding movant's first contention, and it appointed counsel to represent him at that hearing.

### A. Ineffectiveness regarding the government's plea offer

"During plea negotiations, defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). An attorney who either fails to convey a formal plea offer to his client or who gives bad advice about whether to accept that plea offer renders deficient performance under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and if prejudice can be shown, the defendant is entitled to habeas relief. *Id.* at 1390-91 (counsel's bad legal advice caused defendant to reject a favorable plea offer that would otherwise have been accepted, resulting in defendant receiving a minimum sentence three and one-half times greater than he would have received under the plea); *Missouri v.*

*Frye*, 132 S. Ct. 1399 (2012) (defense counsel renders ineffective assistance by failing to communicate formal plea offers that may be favorable to the accused).

Movant contends that his trial attorney's advice regarding the government's plea offer was deficient because counsel failed to explain "that his mandatory minimum would double if he proceeded to trial," doc. 227 at 2, and that counsel's bad advice was prejudicial because "he would certainly have changed his plea" had he been given proper advice. *Id.*

The plea agreement provided that if movant pled guilty to conspiracy to import controlled substances (Count 2) and importation of controlled substances (Count 4), he would face a sentence of 10 years to life imprisonment. Gov't Ex. 4. The plea agreement further reflected the government's promise not to "seek to enhance the defendant's sentence pursuant to 21 U.S.C. § 851" if he elected to accept the plea offer. *Id.* Movant conceded at the evidentiary hearing that his attorney discussed the plea agreement with him at least four times but testified that counsel never mentioned the possibility of a § 851 enhancement or explained its effect. Movant claims that he was unaware that the filing of a § 851 notice

would have the effect of enhancing his mandatory minimum sentence from 10 to 20 years. Instead, he testified that his attorney advised him only that he would lose the reduction for acceptance of responsibility if he proceeded to trial.

Movant's trial attorney, Robert Nye, gave a very different account of his discussions with his client. Nye testified that during each of their multiple meetings regarding the government's plea offer, he not only informed movant about the terms of that plea offer but constantly encouraged him to accept it. Nye stated that he timely presented movant with the government's entire written plea offer and specifically reviewed the summary portion -- the nontechnical part best comprehended by lay people -- that reflected the government's promise not to seek the § 851 enhancement if movant elected to plead guilty.

Nye told movant that "it was foolish for him to try this type of case." He explained the § 851 consequence if he did not take the "ten years to life" deal offered: That "the government would file an 851 enhancement" exposing him to the "twenty years to life" imprisonment. Nye reminded movant of that consequence again, during their fourth meeting shortly

before trial. He insists that "I told him about the enhancement every single time I saw him. That was a huge thing. I essentially told him he may never get out of jail . . . if he goes to trial and loses, and that's precisely what happened."[2]

The Court credits Nye's testimony over movant's. Nye supported his testimony with his "out-of-court hourly worksheet" record in this case. Gov't Ex. 2, doc. 248-1. Nye marked on this log his visits with movant, including when he discussed the plea agreement, and recalled "almost wanting to yell" at him for not taking the deal. With experience in some 30 federal criminal cases (and before that, military litigation experience as a Judge Advocate General), it would not make sense for Nye to overlook such a critical factor, one that he expressly discussed in email plea negotiations with the government, *see* Gov't Ex. 1, doc. 248, and which was the core feature of the government's plea offer. Movant, in contrast, has every incentive to misremember (if not lie about) what Nye told him. This claim, therefore, should be denied. *See Morrison v. United States*, 2012 WL 4711863 at * 3 (S.D. Ala. Oct. 3, 2012) (rejecting IAC-based,

---

[2] On cross he acknowledged that he did not recall whether he used the term "851," but he did, consistent with his practice, repeatedly use the term lay people are better able to grasp: "enhancement."

5

bungled guilty plea claim because attorney correctly warned defendant that, "if he went to trial, he could face exposure to a term of imprisonment approaching 30 years in a worst-case scenario.").

B.  **Movant's remaining claims**

Movant also faults Nye for failing to raise a claimed *Brady* violation on appeal. Doc. 220 at 5; doc. 221 at 7-11. The government insists that this claim is baseless because the statement on which movant relies did not even exist until over six months *after* his trial. Doc. 225 at 21-27. The government also argues the same about movant's claim that the government violated various rights by allowing a co-defendant to testify about untruths. Doc. 220 at 7-9; doc. 221 at 13-14; doc. 225 at 27-28. Movant does not dispute this showing, so these claims should be denied.

Two days *after* the evidentiary hearing movant moved under Fed. R. Crim. P. 45 "for a reasonable extension of time to file a brief before the Report[] and Recommendation[ is] disseminated in light of the newly discovered evidence presented at [that hearing]." Doc. 249. Movant does not say what that evidence is, much less with what legal theory he would present it. Nor, obviously, is his appointed counsel willing to commit to a specific time frame to brief this new claim. The motion is **DENIED**.

Jose Garcia-Duran's § 2255 motion should therefore be **DENIED**. Doc. 220. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this __24th__ day of April, 2013.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA